# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LAVINIA CARDOZA NEGRÓN, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CIVIL NO.: 16-1553 (MEL) |

## OPINION AND ORDER

Pending before the court is Lavinia Cardoza Negrón's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits. Plaintiff, who previously worked as an administrative assistant, contends that the administrative law judge improperly relied on her Global Assessment of Functioning score and on her ability to take care of her personal needs, that the administrative law judge erred in discounting the opinion of Dr. Michael Babilonia, the treating physician, and that the administrative law judge posed hypothetical questions to the vocational expert that did not accurately reflect all her limitations.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On February 24, 2012, Plaintiff filed an application for Social Security benefits alleging that on September 3, 2010 ("the onset date"), she became unable to work due to disability. Tr. 617.[1] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. Tr. 18. Prior to becoming unable to work, Plaintiff was an administrative assistant. Tr. 39. The claim was denied on July 24, 2012, and upon reconsideration on November 21, 2013. Tr.

---

[1] "Tr." refers to the transcript of the record of proceedings.

104; 108. Thereafter, Plaintiff requested a hearing, which was held on November 4, 2014 before Administrative Law Judge Gregui Mercado (hereafter "the ALJ"). Tr. 36. On November 28, 2014, the ALJ issued a written decision finding that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 3, 2010, through the date of this decision." Tr. 28–29. Thereafter, Plaintiff requested review of the ALJ's decision. Tr. 9. Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1. Plaintiff filed a complaint on March 29, 2016. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 20; 23.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2

Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

3

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that the plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether the plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the

ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III. THE ALJ'S DETERMINATION

In the case at hand, the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, September 3, 2010. Tr. 18. At step two, the ALJ determined that Plaintiff "has the following severe impairments: cervical and lumbar degenerative disc disease, osteoarthritis, and carpal tunnel syndrome." Id. (citations omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 21. Next, the ALJ determined that Plaintiff

> has the exertional residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to lifting and carrying up to 20 pounds occasionally and 10 frequently. She is restricted to standing and walking for up to six hours in an eight-hour workday and sitting for up to six hours in an eight-hour workday. Additional limitations are present. The claimant can never climb ladders, ropes, or scaffolds. She is limited to frequent balancing, crouching, and crawling as well as occasional kneeling, stopping, and climbing of stairs and ramps.

Tr. 22. At step four, the ALJ presented Plaintiff's RFC limitations to a vocational expert. The vocational expert testified that Plaintiff can perform past relevant work as an administrative clerk. Tr. 28. Because Plaintiff can perform past relevant work, the ALJ concluded that she is not disabled. Id.

### IV. ANALYSIS

Plaintiff challenges the ALJ's decision with regard to steps two and four of the sequential process. First, Plaintiff argues that the ALJ improperly relied on a Global Assessment of Functioning score and on her ability to take care of her personal needs when determining whether her major depressive disorder was severe. Second, Plaintiff argues that the ALJ erroneously

discounted the opinion of the treating physician, Dr. Babilonia, when determining her RFC. Third, Plaintiff argues that the ALJ posed hypothetical questions to the vocational expert that did not accurately reflect all her limitations.

1. **Plaintiff's claim that the ALJ should not have relied on a Global Assessment of Functioning score.**

Plaintiff contends that the ALJ improperly relied on a Global Assessment of Functioning (GAF) score when determining whether her major depressive disorder was severe.[2] This is due to the fact that since 2013, the GAF score is no longer used in the Diagnostic and Statistics Manual of Mental Disorders. Negrón v. Colvin, Civ. No. 13-1926 CVR, 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015); Hall v. Colvin, 18 F. Supp. 3d 144, 153 (D.R.I. 2014) (citing Am. Psychiatric Ass'n, Diagnostic and Stat. Manual of Mental Disorders DSM–5 16 (5th ed. 2013)). Plaintiff's argument is inapposite. The ALJ did take note of Dr. Gloria Duran's opinion that Plaintiff had a GAF score of 60, which is consistent with a mental impairment that imposes moderate restrictions in social and occupational functioning. Tr. 19. However, the ALJ only gave partial weight to Dr. Duran's opinion because of his finding that "the record as a whole supports *mild* restrictions." Tr. 20 (emphasis added). Thus, the ALJ did not in fact rely on Plaintiff's GAF score at step two. To the contrary, the ALJ concluded that Dr. Duran's opinion as to Plaintiff's GAF score is not supported by the record.

2. **Plaintiff's claim that the ALJ should not have relied on her ability to take care of her personal needs.**

Plaintiff contends that the ALJ improperly relied on her ability to take care of her personal needs when determining whether her major depressive disorder was severe. This argument is not tenable. Step two requires the ALJ to determine whether the plaintiff has "a severe medically

---

[2] The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004).

determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When a plaintiff has a medically determinable mental impairment, the ALJ must evaluate his or her "paragraph B criteria." Rivera v. Colvin, No. 15-1798 (CVR), 2016 WL 4094868, at *3 (D.P.R. Aug. 2, 2016). These criteria focus on four functional areas, which include activities of daily living. Id. Here, the ALJ identified Plaintiff's major depressive disorder as a medically determinable mental impairment. Tr. 19. Thus, the ALJ was *required* to consider Plaintiff's activities of daily living when determining whether her major depressive disorder was severe.[3]

### 3. Plaintiff's claim that the ALJ erroneously discounted the opinion of the treating physician.

Plaintiff contends that the ALJ should have given more weight to the opinion of the treating physician, Dr. Babilonia, when determining Plaintiff's RFC. In his opinion, the ALJ stated that he "g[ave] little weight to Dr. Babilonia's opinion" because it is inconsistent with Dr. Babilonia's clinical findings in his consultative examination. Tr. 25.

The disability determination process generally gives "more weight to medical opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). However, the ALJ is not *required* to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2–3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210–211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d

---

[3] Plaintiff cites to three cases where courts expressed skepticism about ALJs' use of plaintiffs' daily activities as a basis to discredit their testimony. See Roddy v. Astrue, 705 F.3d 631, 635–36 (7th Cir. 2013); Hughes v. Astrue, 705 F.3d 276, 277–79 (7th Cir. 2013), Milam v. Barnhart, 2004 U.S. Dist. LEXIS 22855, *2–3. However, none of these cases were decided at step two, where the ALJ is *required* to consider plaintiffs' activities of daily living. Id.

17, 25 (D.P.R. 2007)). Specifically, the ALJ may disregard the treating physician's opinion when it is "not supported by medically acceptable clinical laboratory techniques, or [is] otherwise unsupported by the evidence." Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221–22 (D.P.R. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir.1994)). This remains true regardless of whether the source of the evidence is a non-treating doctor. Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 130 (1st Cir. 1981)).

Plaintiff argues that "[t]he medical reports from Dr. Babilonia . . . are consistent with each other." An examination of the medical reports demonstrates that this is not the case.

On September 10, 2013, Dr. Babilonia found normal muscular strength in both of Plaintiff's hands, negative Tinel and Phalen's tests, and no restrictions in either of Plaintiff's hands with gripping, grasping, pinching, finger trapping, opposition of fingers, buttoning shirts, picking up coins, and writing. Tr. 428. This evidence undermines Dr. Babilonia's opinion that Plaintiff is restricted to performing simple grasping for up to four hours bilaterally and fine manipulation for up to four hours. Tr. 1063. Dr. Babilonia also found that Plaintiff had normal strength at the lower extremities and a normal gait. Tr. 429. Further, while Dr. Babilonia indicated that Plaintiff used a cane, he also stated that she did not use an assistive device, that a question asking him whether he examined her gait without the assistive device was not applicable, and that a physician did not prescribe her an assistive device. Id. This evidence casts doubt on Dr. Babilonia's opinion that Plaintiff is limited to standing for up to two hours in an eight-hour workday and walking for up to two hours in an eight-hour workday. Tr. 1063. Lastly, Dr. Babilonia found that Plaintiff had normal motor strength, that there were no deficits in her sensory modalities, and that she had a normal range of motion throughout the body except in the back, where she had a flexion of 80

degrees out of 90 degrees. Tr. 424; 426. This evidence throws Dr. Babilonia's opinion that Plaintiff is limited to lifting and carrying 10 pounds occasionally into question. Tr. 1063. In sum, the record supports the ALJ's conclusion that Dr. Babilonia's opinion "is inconsistent with [his] clinical findings in his consultative examination." Tr. 25.

### 4. Plaintiff's claim that the ALJ posed hypothetical questions to the vocational expert that did not accurately reflect all her limitations.

Plaintiff contends that the ALJ posed hypothetical questions to the vocational expert that did not accurately reflect all her limitations. Specifically, Plaintiff asserts that the ALJ should have included in her questions to the vocational expert that she had a short attention span, which she claims is a symptom of major depressive disorder.[4] However, at step two, the ALJ determined that Plaintiff's major depressive disorder is non-severe, and "[i]t is well within the ALJ's authority to weigh the evidence, to determine the credibility of the plaintiff's subjective complaints, and to use only credible evidence in posing a hypothetical question to a vocational expert." Vélez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 469 (D.P.R. 2010). Thus, while Plaintiff challenges the ALJ's decision with regard to step four, she is truly challenging the ALJ's determination at step two that her major depressive disorder is non-severe.

In making this determination, the ALJ gave significant weight to the opinion of Dr. Adalisse Borges, a state agency psychological consultant, that Plaintiff's major depressive disorder is non-severe.[5] Tr. 19. As described above, the ALJ gave partial weight to the opinion of Dr. Duran, a treating source, that Plaintiff has a mental impairment that imposes moderate restrictions

---

[4] Dr. Beatriz Ortiz, a treating source, observed that Plaintiff had a short attention span. Tr. 416–420. However, the ALJ did not state whether he gave any weight to Dr. Ortiz's opinion. Tr. 19. Further, Dr. Ortiz's conclusion is not supported by the record. Dr. Duran, a treating source, found that Plaintiff had appropriate attention and concentration (Tr. 1053) and Plaintiff herself stated that she can pay attention and follow written and oral instructions well (Tr. 119).
[5] It does not always follow from a finding that a plaintiff has major depressive disorder that the disorder is "severe." See Perry v. Colvin, No. 2:15-CV-01145, 2016 WL 1183155, at *6 (S.D.W. Va. Mar. 28, 2016) (affirming the ALJ's determination that Plaintiff's major depressive disorder and generalized anxiety disorder, considered singly and in combination, were non-severe).

in social and occupational functioning. Tr. 20. This was due to the ALJ's finding that "the record as a whole supports *mild* restrictions." Id. (emphasis added).

In making this finding, the ALJ evaluated Plaintiff's "paragraph B criteria," which includes activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. Id. The ALJ used a five-point scale of "none," "mild," "moderate," "marked," and "extreme" to rate Plaintiff's symptoms. See Rivera, 2016 WL 4094868, at *3.

In the area of daily living, the ALJ found that Plaintiff has "mild" limitation because she retains the ability to perform several activities of daily living, such as preparing simple foods, performing household chores, driving when necessary, shopping at stores for food, paying bills, and managing a savings account. Tr. 20; 116–17. In the area of social functioning, the ALJ found that Plaintiff has "mild" limitation because she retains the ability to interact with other people. Tr. 20. Specifically, Plaintiff spends time with her children and husband daily, calls her mother, and has no problem getting along with friends, family, neighbors, or other people. Tr. 118–19. In the area of concentration, persistence, or pace, the ALJ found that Plaintiff has "mild" limitation because she retains the ability to initiate, persist, and complete tasks and instructions. Tr. 20. Specifically, Plaintiff can pay attention and follow written and oral instructions well. Tr. 119. In the area of decompensation, the ALJ found that Plaintiff has experienced no episodes of decompensation of extended duration. Tr. 20.

Because the ALJ found that Plaintiff's major depressive order causes no more than "mild" limitation in any of the first three areas and no episodes of decompensation of extended duration in the fourth area, the ALJ concluded that Plaintiff's major depressive order is non-severe. Tr. 21. This conclusion is supported by substantial evidence.

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of December, 2018.

s/Marcos E. López  
U.S. Magistrate Judge